IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA DURKIN, both individually and as Administratrix of the Estate and Administratrix Ad Prosequendum of the Estate of WILLIAM R. GANGELL, Jr., Deceased | : : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| PACCAR, Inc., et al., | : | No. 09-4892 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                        **January 19, 2010**

      Presently before the Court is Plaintiff's Motion to Remand, Defendants' Motion to Transfer Venue, and three motions to dismiss filed by Defendants. For the reasons that follow, the Court will deny Plaintiff's remand motion and transfer the case to the District of New Jersey for resolution of the remaining matters.

**I.     BACKGROUND**

      In 2008, R.E. Pierson Construction Co. ("Pierson") purchased a large number of fifty foot long steel pilings. Bills of lading indicate that the pilings were transported to Pierson from "Dura-Bond" of Steelton, PA by Liedtka Trucking. (Notice of Removal Ex. F [Bills of Lading].) The steel was transported to Pierson in several shipments, each consisting of seven "doubles" (two steel pilings joined together), over the month of September 2008. (*Id.*) Dura-Bond[1] had coated the steel

---

[1] The Court uses the terms "Dura-Bond" and "Dura-Bond Defendants" to refer to Defendants Dura-Bond Industries, Inc.; Dura-Bond Coating, Inc.; Dura-Bond Development, Inc.; Dura-Bond Steel Corp.; and Dura-Bond Pipe, LLC.

with a coal tar epoxy before its delivery to Pierson and placed nylon cording between the doubles to protect the recently applied coating during transit. (Mot. To Remand Ex. F [Dura-Bond Prelim. Objections] ¶ 51.).

On November 12, 2008, William R. Gangell, Jr., a citizen of New Jersey, was driving a tractor-trailer loaded with eleven of these steel piling doubles for Pierson, his employer. (Pl.'s Mot. to Remand Ex. A [Compl.] ¶¶ 6–7; Notice of Removal ¶ 6.) The trip originated at Pierson's facility in Williamstown, New Jersey and was to conclude at another Pierson facility in Pilesgrove, New Jersey. (Notice of Removal Ex. I [N.J. Police Crash Inspection Report] at WNC110.) As the truck slowed to approach an intersection in Franklin Township, New Jersey, the steel load shifted forward, collapsing the bulkhead of the trailer and pinning Gangell inside the tractor. (Compl. ¶¶ 7–8; Pl.'s Mot. to Remand ¶ 2.) Gangell survived the initial impact but died several hours later at a nearby hospital. (*Id.* ¶ 3.)

According to a crash investigation conducted by New Jersey police, the truck Gangell was driving was 103,000 pounds, which was 23,000 pounds overweight. (N.J. Police Crash Inspection Report at WNC116.). The crash investigation also indicated that insufficient tie downs were used to secure a load of that weight. (*Id.* at WNC111.)

Following this incident, Pierson filed a lawsuit in the Superior Court of Atlantic County, New Jersey – Chancery Division, seeking the release of the tractor, trailer, and steel, which at the time were being held in storage. (Mot. to Transfer Venue Ex. F [Dec. 23, 2008 letter] at 2.) Gangell's estate challenged that request. (*Id.*) The presiding judge in that case, Judge William C. Todd III, issued several orders related to the inspection and preservation of physical evidence from the accident. In a December 23, 2008 letter written to Wabash National Corporation ("Wabash"),

PACCAR, Inc. ("PACCAR"), and Peterbilt Motors Co. ("Peterbilt"), Durkin's lawyer stated that Judge Todd had ordered a videotaped inspection of the tractor, trailer, and steel, and that relevant parties were invited to attend. (Dec. 23, 2008 letter.) The letter stated that "due to the potential that the subject tractor, trailer, steel, and component parts may be released, repaired, or otherwise materially altered after [the inspection and related hearing] it is **strongly encouraged** that representatives from your company be present at the previously mentioned events." (*Id.*) Judge Todd entered an Order on January 13, 2009 preserving the tractor, trailer, steel, and all related property, and allowing inspections of such physical evidence through February 13, 2009. (Mot. to Transfer Venue Ex. G [Order Preserving Property].) Plaintiff's counsel was instructed "to forward a copy of this Order to all attorneys to appear January 13, 2009 and to all other interested parties immediately." (*Id.*) Judge Todd issued an order on February 11, 2009 releasing the steel to Pierson to use as it deemed appropriate. (Mot. to Transfer Ex. I [Judge Todd's Feb. 11, 2009 Order].)

Plaintiff Jessica Durkin, Gangell's fiancée and a citizen of New Jersey, filed a lawsuit in New Jersey Superior Court, Middlesex County, on July 21, 2009. (Compl. ¶ 6; Notice of Removal ¶¶ 6, 34; Notice of Removal Ex. J. [N.J. Compl.].) Durkin's lawsuit named as defendants the purported manufacturers of the tractor (PACCAR and Peterbilt), the purported manufacturer of the trailer (Wabash), the purported manufacturers of the cargo straps used to secure the steel load (Spanset, Inc. and ANCRA International LLC), and the purported manufacturers of the steel (Skyline Steel, LLC and ArcelorMittal USA, Inc.). (N.J. Compl.; Mot. to Remand ¶ 4.) The lawsuit did not name Dura-Bond. All of the defendants named in the New Jersey lawsuit are of diverse citizenship from Plaintiff, except for Skyline Steel, LLC ("Skyline"), which is headquartered in Parsippany, New Jersey. (N.J. Compl. ¶¶ 2–5.)

3

Wabash removed the New Jersey action to the United States District Court for the District of New Jersey. (Notice of Removal ¶ 35.) Although Plaintiff and Defendant Skyline shared New Jersey citizenship, Wabash argued that removal was proper because Skyline was either a nominal party or was fraudulently joined. (*Id.*) In its Notice of Removal of the New Jersey action, Wabash contended that Skyline did not manufacture the steel but merely acted as a broker for its sale. (Mot. to Remand Ex. E [N.J. Notice of Removal] ¶ 22.) Wabash further asserted that the steel was manufactured by Nucor-Yamato Steel Co. ("Nucor-Yamato") and then transported to Dura-Bond Industries, where it was coated and packaged for delivery to Pierson. (*Id.*)

In response, Plaintiff discontinued her New Jersey lawsuit and refiled in the Pennsylvania Court of Common Pleas, Philadelphia County. (Mot. to Remand ¶ 14.) The Pennsylvania complaint was nearly identical to the New Jersey complaint, except for two things: in the Pennsylvania action, Plaintiff dropped her claim against Skyline and sued the Dura-Bond Defendants, which are all citizens of Pennsylvania.[2] (Compl. ¶ 5.) Plaintiff's Pennsylvania state complaint alleges that the Dura-Bond Defendants coated and packaged the steel load negligently and in a manner that rendered the steel unreasonably dangerous. (*Id.* ¶¶ 30–36, 55–60.)

On October 23, 2009, Wabash removed the case to this Court with the consent of its co-defendants. Wabash contends that the Dura-Bond Defendants were either fraudulently joined or nominal parties brought into this case solely to prevent removal and that Plaintiff has no real intention of prosecuting a claim against them. The Dura-Bond Defendants moved to dismiss the

---

[2] Dura-Bond Industries, Inc. is the parent company of the other Dura-Bond Defendants, and is located in Export, PA (Westmoreland County). (Dura-Bond Prelim. Objections ¶ 21.) Dura-Bond Pipe, LLC, the entity responsible for coating the steel, is a subsidiary of Dura-Bond Industries, Inc. with a principal place of business in Steelton, PA (Dauphin County). (*Id.* ¶¶ 22–23.)

case against them on similar grounds. In addition, PACCAR and Peterbilt moved to dismiss Plaintiff's punitive damages claims on the grounds of insufficient pleading. On November 18, 2009, Plaintiff moved to remand the case back to state court saying that removal was improper under 28 U.S.C. § 1441(b). Following a status conference on December 10, 2009, PACCAR, Wabash, Spanset, Inc. ("Spanset") and ANCRA International LLC ("ANCRA") filed a Motion to Transfer Venue to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a), and Spanset filed a Motion to Dismiss on jurisdictional grounds.

## II.   STANDARDS OF REVIEW

### A.   Fraudulent Joinder

In ruling on a motion to remand in which a defendant alleges fraudulent joinder, the Court must determine if there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 32 (3d Cir.1985)). The removing party carries a heavy burden of persuasion when it asserts that a defendant is fraudulently joined. *Id.* at 217. As the Third Circuit has noted in this context, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* "'[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.'" *Id.* (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). The fact that a plaintiff's motive for joining a particular defendant is to prevent removal is not considered indicative of fraudulent joinder. *See*

*Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 32 (3d Cir. 1985). "[A] district court must accept any well-pleaded allegations as true, and resolve uncertainty in the law . . . in plaintiff's favor." *In re Briscoe*, 448 F.3d at 219–20.

However, a district court is entitled to "look beyond the face of the complaint for indicia of fraudulent joinder." *Abels,* 770 F.2d at 29. A court can make a "limited consideration of reliable evidence that the defendant may proffer to support the removal," including evidence established in prior proceedings and facts subject to judicial notice under Federal Rule of Evidence 201. *In re Briscoe*, 448 F.3d at 220–21. If such evidence indicates that the plaintiff has no real intention in good faith to prosecute the action against a defendant, then that defendant's citizenship can be disregarded for removal purposes. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 421–22 (E.D. Pa. 2002).

**B.     Transfer of Venue**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to grant a change of venue pursuant to this section lies within the discretion of the trial court. *Wilce v. Gen. Motors Corp.*, Civ. A. No. 96-6194, 1996 WL 724936, at *1 (E.D. Pa. Dec. 13, 1996). The trial court possesses broad discretion in this matter. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Defendant, as the moving party, bears the burden of proving that venue is proper in the transferee district and that a transfer is appropriate. *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000); *see also Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Idasetima v. Wabash Metal Prods., Inc.*, Civ. A. No. 01-197, 2001

WL 1526270, at *1 (E.D. Pa. Nov. 29, 2001).

### III. DISCUSSION

#### A. Removal

A case cannot be removed to federal court if a properly joined defendant is a citizen of the State in which the action was brought. 28 U.S.C. § 1441(b). Since the Dura-Bond Defendants are Pennsylvania citizens and Plaintiff brought her lawsuit in Pennsylvania state court, removal would not be appropriate if there is a "reasonable basis in fact or colorable ground supporting the claim against" the Dura-Bond Defendants and a "real intention in good faith to prosecute the action against" the Dura-Bond Defendants. *See In re Briscoe*, 448 F.3d at 216.[3]

Reliable evidence indicates that Plaintiff has no real intention in good faith to prosecute her claim against the Dura-Bond Defendants. Specifically, the procedural history of this case demonstrates that Plaintiff has never intended to pursue a claim against the Dura-Bond Defendants.

Plaintiff's initial lawsuit in her home state of New Jersey did not name any of the Dura-Bond entities as Defendants even though Dura-Bond was named in the New Jersey Police crash investigation report and in bills of lading for the steel. (N.J. Police Crash Investigation Report at WNC110; Notice of Removal Ex. H [Attached Bills of Lading] at 9.) Instead, Plaintiff sued (in addition to Dura-Bond's co-defendants in this case) New Jersey citizens Skyline and ArcelorMittal USA, Inc. ("ArcelorMittal"), claiming that they manufactured the steel and were liable to Plaintiff

---

[3] Because the parties are diverse and the amount in controversy exceeds $75,000, this Court's jurisdiction over this litigation is not at issue. *See Korea Exch. Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir. 1995) ("[S]ection 1441(b)'s bar against removal by a forum-state citizen is not jurisdictional.").

on theories of negligence and strict liability. (N.J. Compl. Counts IV and VIII.) However, when Wabash removed the case to federal court alleging that Skyline was fraudulently joined, Plaintiff abandoned her claim against Skyline and ArcelorMittal, as well as any claim that the manufacturer of the steel was liable to her fiancé's estate. Indeed, Plaintiff jettisoned her New Jersey lawsuit entirely, opting instead to sue in Pennsylvania state court and add Pennsylvania defendants.

Plaintiff's contention that it only learned of the relationship Skyline and the Dura-Bond Defendants had with the subject steel after the New Jersey lawsuit was filed is belied by the history of this dispute. First, Plaintiff had the ability to name Dura-Bond Defendants in the New Jersey lawsuit because Dura-Bond was listed in the New Jersey Police crash investigation report and she had access to the bills of lading for the delivery of the steel, which indicated that the steel was transported to Pierson from Dura-Bond. (N.J. Police Crash Investigation Report at WNC110; Notice of Removal Ex. H at 9.)

Secondly, there is no valid explanation for Plaintiff's abrupt change in legal theory. Upon learning that the steel was manufactured by Nucor-Yamato and not by Skyline Steel, she opted to abandon her claim that the steel manufacturer was at fault and instead allege (for the first time) that fault rested with the entity that coated the steel. Plaintiff's willingness to discard her claim that the steel manufacturer was at fault once it was demonstrated that the manufacturer's presence in the case would not prevent removal and her belated accusations against the coaters of the steel strongly suggest that Plaintiff had no intention to bring a good faith claim against either.

Furthermore, Plaintiff's conduct during the Atlantic County litigation suggests fraudulent joinder. Judge Todd's preservation orders and his instructions that all other interested parties be informed of them were designed to ensure that potential defendants had the opportunity to inspect

and analyze physical evidence of the accident before such evidence was released to its rightful owner. (*See* Order Preserving Property.) While Plaintiff's lawyer contacted Wabash, PACCAR, and Peterbilt to inform them of their opportunity to inspect the tractor, trailer, and steel involved in the accident, she did not inform the Dura-Bond Defendants, despite her access to information indicating that the steel had been in the possession of the Dura-Bond Defendants before it was shipped to Pierson. (*See* N.J. Police Crash Investigation Report at WNC110; Notice of Removal Ex. H at 9.) If Plaintiff intended to pursue a good faith claim that the manner in which the Dura-Bond Defendants coated the steel or placed cording between the steel prior to transport rendered them liable, she certainly would have notified them and given them a chance to inspect the steel before it was returned to Pierson. Plaintiff cannot claim that the Dura-Bond defendants coated the steel in such a way that it lacked sufficient friction and then not provide them with a chance to inspect the steel and test its coefficient of friction. The fact that she did not give the Dura-Bond Defendants notice of their opportunity to inspect the steel indicates that she did not intend to pursue a good faith claim against them.

Therefore, this Court finds that Plaintiff lacks a real intention in good faith to prosecute the action against the Dura-Bond Defendants, and that therefore, the citizenship of the Dura-Bond Defendants can be disregarded for purposes of removal. There being complete diversity of citizenship among the parties, an amount in controversy exceeding $75,000, and no properly joined party who is a citizen of the state in which the action was brought, this Court has subject matter jurisdiction over this litigation and removal was appropriate. Plaintiff's Motion to Remand will be denied.

**B.     Venue**

Having determined that this case was properly removed, the Court will now consider whether this case should be transferred to the District of New Jersey. The moving defendants have demonstrated that venue is proper in the District of New Jersey, since a substantial number of the events giving rise to the claim—particularly, the loading of the steel onto Pierson's truck and the accident itself—occurred in the District of New Jersey. *See* 28 U.S.C. § 1391(a)(2). Therefore, this Court will weigh whether such a transfer is appropriate under 28 U.S.C. § 1404(a).

The Third Circuit has enumerated a number of private and public factors that a district court should consider when deciding a motion to transfer venue under § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private factors include: the plaintiff's forum preference; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties, as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the locations of books and records, to the extent those materials can only be produced in the alternative forum. *Id*. The public factors include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id*.

    *1.     Private Factors*

Normally, the plaintiff's choice of forum is entitled to great weight. *Shutte*, 431 F.2d at 25; *see also Wilson v. State Farm Mutual Auto. Ins. Co.*, Civ. A. No. 04-1562, 2004 WL 1551743, at

*2 (E.D. Pa. July 8, 2004). Here, however, Plaintiff does not reside in the chosen forum and the incident giving rise to her claim occurred outside of her chosen forum. Therefore, plaintiff's choice is entitled to less deference. *See Cameli v. WNEP-16 The News Station*, 134 F. Supp. 2d 403, 405–06 (E.D. Pa. 2001); *Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999) ("A locale that is not the home of the plaintiff and where few of the operative facts occurred is entitled to less weight."); *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996) ("Here, since plaintiffs, non-district residents, have no connection with this district, their choice of forum is not entitled to great weight."); *Feldman v. Pub of New Jersey*, Civ. A. No. 94-1660, 1994 WL 369877, at *2 ("All of the operative facts in this case occurred not in Pennsylvania, but, rather, in New Jersey. Accordingly, the plaintiffs' choice of forum is not entitled to overwhelming weight.").

The convenience of the parties and witnesses is not strongly implicated because of the close distance between this courthouse and the federal courthouse in Camden, New Jersey. However, the Court notes that the people who witnessed the accident and responded to it are in New Jersey and that records of the police crash investigation are in New Jersey. (Mot. to Transfer Venue ¶¶ 29–32.)

### 2. Public Factors

The District of New Jersey has a local interest in deciding this case, which this District most decidedly does not. The crash that underlies this case took the life of a New Jersey citizen on a New Jersey road during a trip that began in New Jersey and was to end in New Jersey. The steel was loaded onto the Pierson truck in New Jersey and the rescue effort involved New Jersey resources and citizens. Plaintiff is a New Jersey citizen, as are the two children who survive the decedent.

In contrast, absolutely none of the events underlying this case occurred in this District. The only connection this District has to this case is that it sits in the same state as the Dura-Bond

Defendants. However, regardless of the Dura-Bond Defendants' Pennsylvania citizenship, none of the conduct of which Plaintiff complains occurred in the Eastern District of Pennsylvania. The steel was coated in Dauphin County, which is located in the Middle District of Pennsylvania, and Dura-Bond's principal place of business is in Westmoreland County, which is located in the Western District of Pennsylvania. *See* 28 U.S.C. § 118(b)-(c) (setting forth counties that comprise Middle and Western Districts of Pennsylvania).

New Jersey has a strong local interest in deciding cases involving the safety of its roads, the conduct of its citizens within the state borders, the compensation received by in-state beneficiaries of its citizens' estate, and the use of its resources. In contrast, whatever interest the state of Pennsylvania has in deciding this case, this District shares no connection to such interest. This factor thus weighs heavily towards transferring this case to the District of New Jersey.

In addition, New Jersey law will likely apply to this case, given New Jersey's strong interest in the case and Pennsylvania's minimal interests.[4] *See Cipolla v. Shaposka*, 267 A.2d 854, 855 (Pa. 1970) (noting that Pennsylvania applies the governmental interest approach to choice of law matters); *Van Dusen v. Barrack*, 376 U.S. 612 (1964) (holding that when a defendant successfully moves for a change of venue under 28 U.S.C. § 1404(a), the transferee court must apply the choice of law rule that would have been followed in the transferor court); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) (holding that federal courts must apply the same choice of law rule that would apply in the courts of the state in which the federal court sits). *See also Erny v. Estate of Merola*, 792 A.2d 1208, 1212–13 (N.J. 2002) (noting that New Jersey applies the governmental

---

[4] The Court is not here making a determination as to the applicable substantive law. This issue has yet to be fully briefed or argued.

interest approach to choice of law matters). A New Jersey district court's greater familiarity with New Jersey law thus further supports transfer to the District of New Jersey.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is denied and Defendants' Motion to Transfer Venue to the District of New Jersey is granted. These decisions render Spanset's Motion to Dismiss moot. This Court will leave it to the judge in the District of New Jersey to assess the outstanding motions, all of which are substantive. An appropriate Order will be docketed separately.