NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| JESSICA DURKIN, both Individually and as Administratrix of the Estate and as Administratrix Ad Prosequendum of the ESTATE OF WILLIAM R. GANGELL, JR., | : : : : | **Hon. Joseph H. Rodriguez** **Civil Action No. 10-2013** |
| Plaintiffs, | | |
| v. | : | **OPINION** |
| PACCAR, INC. and PETERBILT MOTORS COMPANY and WABASH NATIONAL CORPORATION and SPANSET, INC. and ANCRA INTERNATIONAL, LLC. and DURA-BOND INDUSTRIES, INC. and DURA-BOND COATING, INC. and DURA-BOND DEVELOPMENT, INC. and DURA-BOND STEEL CORP. and DURA-BOND PIPE, LLC., | : : : : : : | |
| Defendants. | | |

---

**RODRIGUEZ, J.**

Presently before the Court is a motion filed by Defendants Dura-Bond Industries,

Inc., Dura-Bond Coating, Inc., Dura-Bond Development, Inc., Dura-Bond Steel Corp.,

and Dura-Bond Pipe, LLC. (hereinafter referred to collectively as "the Dura-Bond

Defendants" or "Dura-Bond"), to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

[Dkt. Entry No. 8].[1]  This case was transferred to the District of New Jersey from the

---

[1] The parties have agreed that Plaintiff will withdraw without prejudice all punitive damages claims against all parties . Therefore, the motion filed by Defendants PACCAR, Inc. and Peterbilt Motors Company to dismiss punitive damages [Dkt. Entry No. 6] will be dismissed and the portion of the motion filed by the Dura-Bond Defendants to dismiss punitive damages will be dismissed in part.

Eastern District of Pennsylvania on January 19, 2010.  [Dkt. Entry No. 40].  The Court has considered the written submissions of the parties and heard oral argument on the motion on September 29, 2010.  For the reasons set forth below, the Dura-Bond Defendants' motion will be granted.

## I.    BACKGROUND

The background facts underlying this action are straightforward.[2]  On November 12, 2008, William Gangell, a New Jersey citizen, was operating a tractor-trailer loaded with a steel load in Franklin Township, New Jersey.  (Complaint at ¶ 6.)  The steel load shifted forward during a braking maneuver, which collapsed the bulkhead of the truck, pinning Gangell inside.  (Complaint at ¶¶ 7-8.)  Gangell died later that day as a result of the injuries he suffered in the accident.  (Id.)

The facts surrounding the subsequent litigation stemming from this incident are less than straightforward and the Court does not here recount in full the extensive, convoluted, and much disputed procedural history.  A detailed procedural history is found in the Eastern District of Pennsylvania's Memorandum Order, transferring the case from the Eastern District of Pennsylvania to this Court.  Durkin v. Paccar, Inc., et al., No. 09-4892, 2010 WL 176851 (E.D. Pa. Jan. 19, 2010).  The following is a brief synopsis.

Following the incident, Plaintiff Jessica Durkin, Gangell's fiancé and administratrix of his estate, filed a lawsuit in New Jersey Superior Court, Middlesex

---

[2] For the purpose of deciding this Motion to Dismiss, the facts alleged in the complaint and all reasonable inferences are accepted as true.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).

County, on July 21, 2009.  The complaint named as defendants the purported

manufacturers of the tractor (PACCAR, Inc. and Peterbilt Motors Company), the

purported manufacturer of the trailer (Wabash National Corp.), the purported

manufacturers of the straps used to secure the steel load (Spanset, Inc. and ACRA

International, LLC), and the purported manufacturers of the steel (Skyline Steel and

ArcelorMittal).  Although Skyline Steel was a New Jersey citizen, Wabash removed the

action to the United States District Court for the District of New Jersey under the theory

that Skyline was either a nominal party or fraudulently joined.  Wabash asserted that

Skyline was merely a broker for the steel and that the steel was manufactured by Nucor-

Yamato Steel and then transported to Dura-Bond in Pennsylvania, where it was coated

and bundled for delivery to Gangell's employer.

In response to the Notice of Removal, Durkin terminated the New Jersey lawsuit

and filed a nearly identical suit in the Pennsylvania Court of Common Pleas,

Philadelphia County on July 21, 2009, naming the Dura-Bond Defendants, along with

the previously named purported manufacturers of the tractor, trailer, and securing

straps.  The complaint states that the subject steel load was coated, bundled in pairs

with nylon cording and distributed by Dura-Bond, a Pennsylvania citizen, to Gangell's

employer.  (Complaint at ¶ 5.)  The complaint alleges that the manner in which Dura-

Bond coated, bundled, and distributed the steel load was a proximate cause of Gangell's

death and asserts that Dura-Bond is liable pursuant to theories of strict product liability

(Count IV, Complaint at ¶¶ 30-36,) negligence (Count VIII, Complaint at ¶¶ 55-60,) and

breach of implied warranty (Count IX, Complaint at ¶¶ 61-64.)  In addition, Durkin, as

administratrix of Gangell's estate, asserts a claim under the Wrongful Death Act (Count

X, Complaint at ¶¶ 65-68) and a claim for Survival Action (Count XI, Complaint at ¶¶ 69-71) against all defendants.

On October 23, 2009, Wabash removed the case to the District Court for the Eastern District of Pennsylvania.  [Dkt. Entry No. 1].  Wabash asserted that although Dura-Bond is a Pennsylvania citizen, it was either fraudulently joined or a nominal party brought into this case solely to prevent removal.  The Dura-Bond Defendants also filed the present motion to dismiss all claims, Defendants PACCAR and Peterbilt filed a motion to dismiss Durkin's punitive damages claims, and all Defendants filed a motion to transfer venue.  Durkin filed a motion to remand the case to the Philadelphia Court of Common Pleas.  On January 19, 2010, Judge Schiller of the Eastern District of Pennsylvania issued an Order denying Durkin's motion and held that Dura-Bond was fraudulently joined and its citizenship could be disregarded for the purpose of removal.[3] Judge Schiller also granted Defendants' motion to transfer venue to the United States District Court for the District of New Jersey.  Durkin has agreed to withdraw all punitive damages claims against all parties with leave to amend her complaint as discovery may dictate.  Presently before this Court is the Dura-Bond Defendants' Motion to Dismiss

---

[3] A case cannot be removed to federal court if a properly joined defendant is a citizen of the State in which the action is pending.  Joinder is fraudulent when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."  Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (emphasis added).  The transferring Court stated in its opinion denying Durkin's motion to remand that "[r]eliable evidence indicates that Plaintiff has no real intention in good faith to prosecute her claim against the Dura-Bond Defendants." Durkin v. Paccar, 2010 WL 176851, at *4.  The transferring Court did not address the validity of Durkin's complaint and expressly reserved for this Court to resolve the outstanding motion to dismiss.  Id. at *7.

pursuant to Rule 12(b)(6).

## II.   STANDARD OF REVIEW

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[4] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[5] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a

---

[4] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[5] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")).  Accord Iqbal, 129 S. Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

6

complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'"

Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. CHOICE OF LAW

Before turning to the merits of Dura-Bond's Motion to Dismiss, a choice-of-law analysis is required.  This matter was transferred to the District of New Jersey from the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).[6]  Therefore, this Court must follow the choice-of-law rules that would have been followed in the transferor court.  See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964); Lafferty v. St. Riel, 495 F.3d 72, 76-77 (3d Cir. 2007).  A district court sitting in diversity jurisdiction over state law claims applies the choice-of-law rules of the forum in which it sits, therefore, this Court must look to Pennsylvania's choice-of-law rules.  See Warner v. Auberge Gray Rocks Inn, Ltee., 827 F.2d 938, 939-40 (3d Cir. 1987) (quoting Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)).

Pennsylvania applies a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" and directs courts to apply the law of the State with the "most interest in the problem."  Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964).  Under this governmental interest approach, this Court must first determine whether there is a conflict between the relevant laws of competing jurisdictions and, in the event of a "true conflict," engage in a contacts-and-

---

[6] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."  28 U.S.C. § 1404(a).  The decision whether to transfer an action pursuant to section 1404(a) rests in the Court's discretion.  Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 631-32 (3d Cir. 1989).

interests analysis to determine which State's law should apply.  See Specialty Surfaces Intern., Inc. v. Continental Cas. Co., 609 F.3d 223, 230 (3d Cir. 2010).

Here, it is possible that both New Jersey and Pennsylvania may have an interest in the disposition of the present action.[7]  Durkin is a New Jersey citizen.  The incident giving rise to this action took place in New Jersey and resulted in the death of a New Jersey citizen.  However, Dura-Bond is a Pennsylvania citizen who allegedly coated and bundled the subject steel load in Pennsylvania.  Durkin alleges various product liability causes of action against Dura-Bond sounding in strict liability, negligence and breach of implied warranty that are governed by state laws.

There is clearly a conflict between the product liability laws of New Jersey and Pennsylvania.  Pennsylvania recognizes separate causes of action for negligence, strict liability, and breach of implied warranty when a plaintiff is injured by a product.  See Soufflas v. Zimmer, 474 F. Supp. 2d 734, 751-54 (E.D. Pa. 2007); 13 Pa. Cons. Stat. §§ 2314, 2315.  But in New Jersey, "the causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability."  Torres v. Lucca's Bakery, 487 F. Supp. 2d 507, 513 (D.N.J. 2007) (quoting Green v. General Motors Corp., 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998)); N.J. Stat. Ann. § 2A: 58C-2.  This distinction in the product liability laws of New Jersey and Pennsylvania represents a genuine conflict and requires

---

[7] The Eastern District of Pennsylvania considered the interests of both States when ruling on the motion to transfer venue and intimated that New Jersey law will likely apply to this case; however, Judge Schiller expressly declined to make a determination as to the applicable substantive law.  See Durkin v. Paccar, 2010 WL 176851, at *7 & n.4.

the Court to examine the policies underlying these laws and the quality of the contacts with each state.  See Torres, 487 F. Supp. 2d at 513 & n.11.

The policies underlying the product liability laws of both states are essentially the same.  Both states "seek to compensate people injured by defective products and regulate conduct of manufacturers and distributors . . . within the state."  Id. at 513.  Here, New Jersey's policy of compensating people who are injured by defective products in the State would be furthered by the application of New Jersey law.  Likewise, Pennsylvania's policy of regulating the conduct of its manufacturers would be advanced by applying Pennsylvania law.  Because these factors are in equipoise, the quality of each States' contacts to the underlying action is determinative.

New Jersey has the most substantial contact with this action.  Although the allegedly defective steel was manufactured in Pennsylvania, the majority of events essential to this litigation occurred in New Jersey.  Gangell was a New Jersey citizen at the time of his death.  The steel load was delivered to Gangell's employer in New Jersey, loaded on Gangell's truck in New Jersey, and was being transported on New Jersey roads at the time of the accident.  New Jersey clearly has a stronger interest in the application of its laws than Pennsylvania.  See id. at 514 (holding that New Jersey law applied for essentially the same reasons as presented here).  Therefore, New Jersey substantive law applies.  As a federal court sitting in diversity, this Court relies on federal precedent to determine the propriety of a motion to dismiss but looks to New Jersey state law to determine if the complaint states a valid cause of action.  See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) (noting that "federal courts sitting in diversity apply state substantive law and federal procedural law"); Erie

R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).[8]

## III.   DISCUSSION

Durkin alleges that Dura-Bond is liable as the manufacturer of the subject steel load under theories of strict liability (Count IV), negligence (Count VIII), and breach of implied warranty (Count IX).[9]  The central focus of each claim is that the subject steel load was either coated, refined, modified, altered, produced, bundled, delivered, marketed, or distributed in a manner that made the product defective or unreasonably dangerous to load and transport.[10]  Dura-Bond does not dispute that it manufactured, bundled, and delivered the subject steel load to Gangell's employer.  However, Dura-Bond asserts that the complaint fails to state a claim for relief because it does not sufficiently allege facts necessary to establish that the Dura-Bond product was defective or the proximate cause of Gangell's injury.[11]

---

[8] "A federal court under Erie is bound to follow state law as announced by the highest state court." Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 174 (3d Cir. 2005) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

[9] In addition, Durkin asserts derivative claims under the Wrongful Death Act (Count X) and the Survival Statute (Count XI) for the same alleged conduct. Because these causes of action, as they apply to the Dura-Bond Defendants, are dependent upon the validity of counts IV, VIII, and IX, they are not addressed individually herein.

[10] A comparison between the nearly identical language of Durkin's strict liability cause of action, (Complaint at ¶ ¶ 32(a)-(h)) and negligence cause of action, (Complaint at ¶ ¶ 58(a)-(h)) reveals that both counts attempt to predicate liability on the same alleged conduct by Dura-Bond.

[11] A major thrust of Dura-Bond's argument in support of its motion to dismiss is that Durkin was merely seeking to prevent removal to a federal court by adding Dura-

## A.    STRICT LIABILITY CLAIM

Durkin first asserts that Dura-Bond is strictly liable as the manufacturer of the subject steel load (Count IV, Complaint at ¶ ¶ 32(a)-(h).)  "A manufacturer has a duty to make sure that its manufactured products placed into the stream of commerce are suitably safe when used for their intended or reasonably foreseeable purposes." Brown v. U.S. Stove Co., 484 A.2d 1234, 1239 (N.J. 1984) (citing Soler v. Castermaster, Div. Of H.P.M. Corp., 484 A.2d 1225, 1229 (N.J. 1984)).  New Jersey courts recognize "normal handling" as a foreseeable use of a product.  Jurado, 619 A.2d at 1318.  As a result, a manufacturer who places into the stream of commerce a defective product which causes injury to people who routinely handle and transport the product may be held strictly liable for that harm.

In New Jersey, "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty" are subsumed by the Products Liability Act, N.J. Stat.

---

Bond as a defendant to this action.  (Motion to Dismiss at pp. 5, 7.)  At oral argument, Dura-Bond also argued that the factors that informed the District Court for the Eastern District of Pennsylvania's fraudulent joinder analysis should be considered by this Court when analyzing the merits of Durkin's claim.  The law of the case doctrine precludes courts from deciding issues that were resolved earlier in the litigation.  Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997).  Thus, Dura-Bond seems to contend that Judge Schiller's finding of fraudulent joinder warrants dismissal under the present Rule 12(b)(6) motion.  However, "the inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder." Batoff, 977 F.2d at 852.  For this reason, Judge Schiller expressly declined to rule on Dura-Bond's Motion to Dismiss.  Durkin v. Paccar, 2010 WL 176851, at *7 ("This Court will leave it to the judge in the District of New Jersey to assess the outstanding motions, all of which are substantive.").  Therefore, Dura-Bond's Rule 12(b)(6) motion to dismiss for failure to state a claim cannot be supported by the previous determination of fraudulent joinder.

Ann. § 2A: 58C-1 et seq. ("PLA").  See In re Lead Paint Litigation, 924 A.2d 484, 503

(N.J. 2007) (noting that "the PLA is both expansive and inclusive, encompassing

virtually all possible causes of action in relating to harms caused by consumer or other

products").  The New Jersey Legislature enacted the PLA to establish clear rules with

respect to certain matters relating to actions for damages for harm caused by products.

N.J. Stat. Ann. § 2A:58C-1.  Therefore, if a claim falls within the scope of the PLA, the

sole method to prosecute the claim is under the Act.  See Green v. Gen. Motors Corp.,

709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998)  ("Under the [PLA] . . . the causes of

action for negligence, strict liability and implied warranty have been consolidated into a

single product liability cause of action, the essence of which is strict liability.") The PLA

provides:

> A manufacturer or seller of a product shall be liable in a product liability action
> only if the claimant proves by a preponderance of the evidence that the product
> causing the harm was not reasonably fit, suitable or safe for its intended purpose
> because it: (a.) deviated from the design specifications, formulae, or performance
> standards of the manufacturer or from otherwise identical units manufactured to
> the same manufacturing specifications or formulae, or (b.) failed to contain
> adequate warnings or instructions, or (c.) was designed in a defective manner.

N.J. Stat. Ann. § 2A: 58C-2.  Therefore, a plaintiff may assert a strict liability cause of

action against a product manufacturer based on an unsafe design defect, manufacturing

defect, or failure to warn theory of liability.  Durkin's strict liability count contains

claims based on theories of design defect (Complaint at ¶ 32(a)-(e),) manufacturing

defect (Complaint at ¶ 32(f),) and failure to warn (Complaint at ¶  32(g)-(h); all

cognizable under New Jersey's statutory scheme.

To plead a prima facie cause of action under the PLA, a plaintiff must show that

the defendant manufactured the product, that a reasonably foreseeable user was injured,

12

that the product was defective, that the defect existed when it left the defendant's control, and that the defect was the factual and proximate cause of the plaintiff's injury. Myrlak v. Port Auth. of N.Y. and N.J., 723 A.2d 45, 52 (N.J. 1999); Zaza v. Marquess & Nell, Inc., 675 A.2d 620, 627 (N.J. 1996); Jurado v. W. Gear Works, 619 A.2d 1312, 1317 (N.J. 1993).  In New Jersey, a plaintiff must establish the same elements to state a claim under a theory of design defect, manufacturing defect, or failure to warn; the only difference is the nature of the alleged defect.  Zaza, 675 A.2d at 629; Matthews v. University Loft Co., 903 A.2d 1120, 1128 (N.J. Super. Ct. App. Div. 2006).

To state a claim upon which relief may be granted the complaint must allege facts to reasonably infer that the Dura-Bond steel load was defective.  Defectiveness may not be inferred from the fact that someone was injured by the product. Zaza, 675 A.2d at 627.  Rather, the plaintiff must demonstrate that the product was defective because it "was not reasonably fit, suitable or safe for its intended purpose."  N.J. Stat. Ann. § 2A: 58C-2;  Myrlak, 723 A.2d at 52 ("Although a plaintiff is relieved from proving fault [under the PLA,] that plaintiff must nonetheless prove that the product was defective under the common law jurisprudence that was incorporated into the Act.").  The term "defect" is not self-defining, however, and has no accepted meaning that is applicable in all strict liability cases.  O'Brien v. Muskin Corp., 463 A.2d 298, 303-04 (N.J. 1983). Ultimately, whether a product is defective requires a policy judgment about the specific product in question.  See Indian Brand Farms, Inc. v. Novartis Crop Protection Inc., --- F.3d ---, 2010 WL 3122815, at *15 (3d Cir. 2010).

### 1.    Design Defect

In design defect claims, ordinarily a product is regarded as defective if the risk of

harm created by the product outweighs its usefulness.  Id.; Lewis v. Am. Cyanamid Co.,

715 A.2d 967, 980 (N.J. 1998); Jurado, 619 A.2d at 1317.  First, the fact-finder must

"determine whether the plaintiff used the product in an objectively foreseeable manner."

Indian Brand, 2010 WL 3122815, at 15.  Next, the fact-finder must balance various

factors relevant to the safety and utility of the product and determine where the product

falls on the risk-utility continuum.  O'Brien, 463 A.2d at 304-05.  The seven factors

articulated by the New Jersey Supreme Court are:

> 1. The usefulness and desirability of the product--its utility to the user and to the public as a whole.
> 2. The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.
> 3. The availability of a substitute product [that] would meet the need and not be as unsafe.
> 4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> 5. The user's ability to avoid danger by the exercise of care in the use of the product.
> 6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
> 7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Truchan v. Nissan Motor Corp.. In U.S.A., 720 A.2d 981, 985 (N.J. Super. Ct. App. Div.

1998) (citing O'Brien).  In most cases the analysis will turn on "whether the reasonably

foreseeable risk of harm posed by the reasonably foreseeable use of the product could

have been reduced or avoided by a reasonable alternative design."  Indian Brand, 2010

WL 3122815, at 15 (citing Lewis, 715 A.2d at 980).  However, the PLA has drastically

changed the method of analyzing design defects by converting some factors of the risk-

utility analysis into absolute bars to liability.  See Roberts v. Rich Foods, Inc., 654 A.2d

1365, 1371 (N.J. 1995).  The PLA provides:

> In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if . . . The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended . . .

N.J. Stat. Ann. § 2A: 58C-3(a)(2).  In the wake of the PLA, a plaintiff may not avoid the obvious-danger/consumer-expectations aspect of the risk-utility.  Roberts, 654 A.2d at 1371 (noting that " a product that satisfies the 3a(2) standard is, by statutory definition, not defectively designed").  Therefore, a plaintiff will rarely be able to present a valid design defect cause of action without addressing why the dangerous characteristics of the product would not be recognized by the ordinary person who uses it.

Durkin alleges that the coated and bundled Dura-Bond steel product constituted a defective design because:

> ... it was neither coated, refined, modified, altered, produced, bundled, delivered, marketed, nor distributed....
> (a)    ...in a manner that would adequately protect tractor trailer operators during an accident and/or braking maneuver...;
> (b)    ...in a manner that would prevent or limit the likelihood of a subject load shifting during an accident and/or braking maneuver...;
> (c)    ...in a manner that would prevent or limit the risk of the load shifting forwards during an accident and/or braking maneuver...;
> (d)    ...with adequate measures to ensure that proper friction existed in the load, including but not limited to proper and adequate placement of nylon cording, so as to prevent and/or limit the risk of the load shifting during an accident and/or braking maneuver...;
> (e)    ...in a way that allowed cargo straps to be appropriately utilized to secure the subject steel load during transport;

(Complaint at ¶¶ 32(a)-(e).)  Durkin further alleges that "[f]or the reasons set forth above, the subject steel load was unreasonably dangerous to foreseeable tractor trailer operators . . . transporting the subject steel load in an ordinary and foreseeable manner."

15

(Complaint at ¶ 34.)  The center of gravity of Durkin's design defect claim is that the manner in which the Dura-Bond steel is coated, bundled and distributed creates a product with a low coefficient of friction that is difficult for truck drivers to secure for transportation.

These allegations are no more than conclusory statements that the bundled and coated Dura-Bond steel is unreasonably dangerous because it has a friction profile that may cause it to shift during transportation.  Durkin does not allege facts to support why this characteristic of the Dura-Bond product makes it unreasonably unfit, unsuitable, or unsafe.  It is well known that heavy objects, like fifty foot units of steel, may shift or slide during handling and transportation.  For this reason, the federal government and the State of New Jersey have promulgated extensive rules and regulations for motor carriers to prevent against the shifting and falling of loads being transported on public roads.  See, e.g. 49 C.F.R. §§ 390.1 (Federal Motor Carrier Safety Regulations, generally), 393.100-.114 (discussing regulations for protection against shifting and falling cargo), 393.116-.136 (discussing requirements for securing specific commodity types); N.J. Admin. Code 13:60-2.1 (adopting and incorporating by reference the Federal Motor Carrier Safety Regulations).  Durkin does not assert why Dura-Bond, as the manufacturer, is required to "limit the likelihood" or "limit the risk" of the obvious potential that the Dura-Bond product may shift during transportation.  As a result, Durkin's complaint does not allege sufficient facts to plead a plausible design defect claim under New Jersey law.

### 2.    Manufacturing Defect

A product may also be defectively manufactured under the PLA if it "deviated

from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J. Stat. Ann. § 2A: 58C-2. "Common examples of manufacturing defects are products that are physically flawed, damaged, or incorrectly assembled." Ebenhoech v. Koppers Industries, Inc., 239 F. Supp. 2d 455, 473 (D.N.J. 2002) (citing Restatement (Third) of Torts § 2 (comment)). To establish the presence of a manufacturing defect, a plaintiff is required to demonstrate, "in a general sense and as understood by a layman, that something was wrong with the product." Id. (citing Scanlon v. Gen'l Motors Corp., 326 A.2d 673, 677 (N.J. 1974) (internal quotation omitted)).

Durkin alleges that the Dura-Bond product "was defective and unreasonably dangerous because it failed to meet all applicable and reasonable safety standards including but not limited to internal standards and federal safety standards and other reasonable standards." (Complaint at ¶ 32(f).) However, Durkin provides no factual support for how the subject steel load deviated from the Dura-Bond standard. The complaint alleges that something was wrong with the Dura-Bond product but it fails to identify what was wrong. This threadbare recital of an element of a cause of action and conclusory statement are insufficient to state a claim under Iqbal, 129 S. Ct. 1937. Therefore, to the extent that this claim seeks to allege that the subject steel load was defective because it deviated from Dura-Bond's internal standards and suffered from a manufacturing defect, it fails to state a claim.

### 3.    Failure to Warn

Even if a product is properly designed and manufactured, it may still be defective

if it fails "to contain adequate warnings or instructions." N.J. Stat. Ann. 2A: 58C-2. In a failure to warn case, the alleged defect is not in the design or the manufacturing of the product. Rather, "the defect is in the failure to warn unsuspecting users that the product can potentially cause injury." <u>Zaza</u>, 675 A.2d at 632. The manufacturer has a duty to warn of "dangers" that it "should have known on the basis of reasonably obtainable or available knowledge." <u>Feldman v. Lederle Labs.</u>, 479 A.2d 374, 376 (N.J. 1984). The PLA defines what constitutes an adequate warning as follows:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to the persons by whom the product is intended to be used...

N.J. Stat. Ann. 2A: 58C-4. Thus, "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable ... warnings ... and the omissions of the ... warnings renders the product not reasonably safe." <u>Indian Brand</u>, 2010 WL 3122815, at * 13.

The essence of Durkin's failure to warn claim is that the Dura-Bond product was defective and unreasonably dangerous "due to the inadequacy or absence of warning stickers, placards, or any proper documentation, or notice to alert tractor trailer operators transporting the subject steel load" to the potential for the coated and bundled steel to shift during transportation. (Complaint at ¶¶ 32(g)-(h).) Durkin merely alleges that the Dura-Bond product may shift during transportation and that no warning was provided to tractor trailer drivers who transport the load. Durkin does not allege that a reasonably prudent manufacturer would have provided such a warning. The Dura-Bond Defendants argue that it "has never once had an issue with the coating of the steel

relative to the shifting of cargo during transport." (Motion to Dismiss at p. 6.)  In fact, Dura-Bond notes that "the same coated steel was transported to [Gangell's employer] in several shipments without incident.  (Id. at p. 7.)  Durkin does not allege facts tending to show that Dura-Bond knew or should have known that the coated steel would be dangerous to transport.  Further, Durkin does not allege why an ordinary tractor trailer operator transporting steel loads, without a warning, would not appreciate the potential for the Dura-Bond product to shift during transportation.  As a result, the complaint does not allege sufficient facts to support a plausible strict liability claim predicated on a failure to warn.

Because the Dura-Bond product was not alleged to be defective, there is no need to address whether or not the complaint sufficiently pleads the other elements of a prima facie cause of action under the PLA.  The law does not impose absolute liability upon a manufacturer simply because a plaintiff was injured by the manufacturer's product.  Myrlak, 723 A.2d at 52.  The Dura-Bond Defendant's motion to dismiss is granted as to the strict product liability claims.

## B.  NEGLIGENCE & BREACH OF WARRANTY CLAIMS

Durkin also alleges that Dura-Bond is liable as the manufacturer of the subject steel load under theories of negligence (Count VIII, Complaint at ¶¶ 55-60,) and breach of warranty.  (Count IX, Complaint at ¶¶ 61-64.)  These claims fall under the definition of a "product liability action," as defined by the PLA and are, therefore subsumed by the strict liability cause of action.  See N.J. Stat. Ann. 2A: 58C-1,-2; Sinclair v. Merck & Co., Inc., 948 A.2d 587, 595 (N.J. 2008); see also Fellner v. Tri-Union Seafoods, LLC, 2010 WL 1490927, at *4 (D.N.J. 2010) (noting that "if the facts of a case suggest that the

19

claim is about defective manufacture, flawed product design, or failure to give an

adequate warning, then the PLA governs and the other claims are subsumed").  "To

determine whether the PLA subsumes a particular claim, courts examine the essential

nature of the claim presented and decide whether the claim would traditionally be

considered a products claim."  Rodnite v. Hovnanian Enterprises, Inc., No. 08-3787,

2010 WL 3079576, at *3 (D.N.J. Aug. 5, 2010).   This is not to say that the PLA

subsumes all causes of action involving a "harm" caused by a "product."  New Hope Pipe

Liners, LLC v. Composites One, LCC, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J.

Nov. 30, 2009).  A negligence claim predicating liability on a breach of duty arising

independent of the manufacturer's duty to provide a non-defective product would not be

considered a product liability action even if the harm was caused by the product.

Likewise, a claim sounding in breach of an express warranty is excluded from the ambit

of the PLA, as this cause of action sounds in misrepresentation rather than product

liability.

        Since the passage of the PLA, New Jersey courts have repeatedly held that claims

of negligent manufacture and breach of implied warranty are no longer viable as

separate causes of action for harm caused by a product.  See, e.g. Port Auth. of N.Y. &

N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999)  ("Under New Jersey law

negligence is no longer viable as a separate claim for harm caused by a product.");

Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 516 (D.N.J.

2002)  ("Because the [PLA] generally subsumes common-law product liability claims,

the Third Circuit, the New Jersey District Court, and New Jersey State courts

consistently have dismissed product liability claims based on common-law theories

when those theories allege harm caused by a product.... In light of the [PLA] and that uniform decisional law interpreting that statutory provision, the Court determines that the [PLA] clearly subsumes plaintiff's common-law claims . . ."); <u>Green</u>, 709 A.2d at 209 ("Under the [PLA] . . . the causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability."); <u>Tirrell v. Navistar Intern, Inc.</u>, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991) (noting that "common-law actions for negligence or breach of warranty are subsumed within the new statutory cause of action").

The "essential nature" of Durkin's allegations are premised in design defect and failure to warn; traditional products liability actions.  Durkin does not assert that Dura-Bond owed Gangell a duty of care in addition to its duty as a product manufacturer.  Durkin also fails to allege that Dura-Bond made any affirmative representation giving rise to a potential breach of express warranty action.  Therefore, Durkin's negligence and breach of implied warranty claims are subsumed by the strict liability action under the PLA.  <u>Sinclair</u>, 948 A.2d at 595.  Dura-Bond's motion to dismiss is granted as to the negligence claim and the breach of warranty claim.

## CONCLUSION

Durkin fails to allege facts sufficient to establish a plausible cause of action under a theory of strict product liability.  Durkin's claims predicated on negligence and breach of warranty sound in product liability and are subsumed by the strict liability cause of action.  Durkin's remaining claims under the Wrongful Death Act and Survival Statute are dependant upon the viability of the products liability causes of action.  Therefore, the present Motion to Dismiss all claims as to the Dura-Bond Defendants will be granted.

21

An appropriate Order shall follow.


Dated: October 19, 2010

                         __/s/ Joseph H. Rodriguez__
                         Hon. Joseph H. Rodriguez,
                         United States District Judge