IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY - CAMDEN VICINAGE

| | |
|---|---|
| JESSICA DURKIN, both Individually and as Administratrix of the Estate and as Administratrix Ad Prosequendum of the Estate of WILLIAM R. GANGELL, Jr. Deceased<br><br>v.<br><br>BEEMAC TRUCKING, LLC., PACCAR, INC., PETERBILT MOTORS COMPANY, WABASH NATIONAL CORPORATION, SPANSET, INC., and ANCRA INTERNATIONAL, LLC. | Civil Action No. 1:10-cv-02013-JHR-AMD |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT WABASH'S MOTION TO COMPEL COSTS ASSOCIATED WITH EXPERT DEPOSITIONS, AND COUNTER-PROPOSAL FOR THE CALCULATION OF THESE COSTS

Plaintiff Jessica Durkin, both Individually and as Administratrix of the Estate and as Administratrix Ad Prosequendum of the Estate of William R. Gangell, Jr., deceased, by and through her attorneys, Stewart J. Eisenberg, Esquire, Nancy J. Winkler, Esquire, Daniel J. Sherry Jr., Esquire of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., responds in opposition to Defendant Wabash National Corporation's Motion to Compel Payment of Expert Deposition Associated Costs, and in so doing, Plaintiff submits the within counter-proposal for the calculation of expert deposition associated costs.

### I.     MATTER BEFORE THE COURT

Defendant Wabash National Corporation has filed a Motion to compel reimbursement of costs allegedly incurred by their own experts associated with their depositions, including time spent traveling, miscellaneous "travel expenses", and time allegedly spent by said experts in preparing for their respective depositions. Plaintiff opposes reimbursing opposing experts for

any costs aside from the time said experts were actually being deposed.

## II.  ARGUMENT

This case involves a tragic incident in which Plaintiff-decedent William Gangell, Jr. (hereinafter "Mr. Gangell"), a tractor trailer operator (engaged to Plaintiff, with two minor children) was killed on November 12, 2008, when a multi-ton coated steel load he was hauling, shifted forward during a low-speed braking maneuver and collapsed the unmarked steel bulkhead of Mr. Gangell's trailer (hereinafter "subject tractor") and traveled forward and through the rear of Mr. Gangell's tractor (hereinafter "the subject tractor"). The shifting load resulted in Mr. Gangell being crushed to death, but not before experiencing excruciating conscious pain and suffering (witnessed by many eyewitnesses) for a protracted time period.

A total of eleven (11) liability experts have been produced for videotaped deposition by the parties, including five for Plaintiff and six for Defendant Wabash.[1] Plaintiff has proposed that reimbursement of expert deposition costs should be for the time the experts are actually present for their deposition (a maximum of seven hours, as well as any time expended during breaks). Conversely, Defendant Wabash has proposed the unprecedented approach that not only should the experts be reimbursed for their time at deposition, the deposing party should also repay the opposing experts in terms of travel expenses (including, presumably, flights and lodging) as well as the time allegedly expended by the experts in preparing for depositions. In support of this novel, wasteful, and approach, Defendant Wabash cites no controlling law, and

---

[1] Notably, Plaintiff cancelled the previously-scheduled deposition of Nicholas Durisek shortly before the deposition was scheduled to occur, at which time Mr. Durisek had already traveled to the greater Philadelphia area. Thus, Plaintiff has agreed to reimburse Mr. Durisek's travel expenses, as is referenced in the attached proposed Order.

2

has not even provided this Court with a full and complete specific itemization and a specific amount they seek in reimbursement (instead choosing to list three alleged representative examples).

It is respectfully submitted that, for the reasons set forth below, Defendant Wabash's Motion should be denied, and Plaintiff's reasonable counter-proposal for the calculation of expert deposition costs should be granted.

### A.  Defendant Wabash's Proposed Approach to Expert Deposition Reimbursement is Unprecedented, Extraordinarily Wasteful, Prejudicial, Inconsistent, and Prone to Abuse

This Honorable Court will note that on page 5 of Defendant Wabash's brief, there is a cursory itemization of alleged deposition costs associated with three of Defendant Wabash's expert witnesses, Robert O'Shea, David. Kemp, and Jacob Fisher. The total presented is **fourteen thousand three hundred and forty three dollars and twenty cents ($14,343.20)**. Of that amount, a mere four thousand one hundred and seventy dollars ($4,170.00) - which represents only twenty nine percent (29%) of the entire amount - was actually charged for the witnesses' respective deposition testimony. The remaining ten thousand one hundred seventy three dollars and twenty cents ($10,173.20) is allegedly being billed for time spent traveling, travel expenses, and deposition preparation time for each of Defendant Wabash's liability experts, all of which are billed at a constant rate for each expert. See Defendant's Brief, p. 5.

Since Defendant Wabash has not actually provided this Court with a specific total figure they seek in reimbursement, it is reasonable to extrapolate from the figures provided by Defendant Wabash regarding the three aforementioned expert witnesses, and apply these figures to the three other liability experts produced by Defendant Wabash but not cited in their

3

immediate brief (specifically, Ronald Ashby, Thomas Vadnais, and Nathan Dorris). In so doing, it is clear that Defendant Wabash seeks to have Plaintiff to pay over twenty thousand dollars ($20,000.00) just in (a) Defendant Wabash's experts' respective time expended during travel; (b) Defendant Wabash's experts' miscellaneous "travel expenses; and (c) the time spent by Defendant Wabash's experts preparing for their respective depositions - which is all in addition to paying the experts for the time actually spent being deposed. For the reasons set forth below, Defendant Wabash's approach should be rejected, and Plaintiff's reasonable counter-proposal should be accepted.

> **1.   There is no relevant caselaw or statute that establishes that Defendant Wabash is entitled to cost reimbursement for the transportation of its own expert witnesses to their respective depositions, or for a deposing party to pay an opposing expert to prepare for his or her deposition.**

Notably, Defendant Wabash cites no specific statute, no specific rule of civil procedure, no specific New Jersey caselaw, nor any governing/binding appellate caselaw in their brief that stands for the proposition that a deposing party must reimburse an opposing expert, in addition to the time spent at the deposition, (a) the time spent by the opposing expert traveling to the deposition (which Plaintiff has neither control nor discretion over); (b) the opposing expert's alleged travel expenses incurred as a result of the deposition (which Plaintiff, likewise, has neither control nor discretion over) and/or (c) the time the opposing expert spent allegedly preparing for the deposition (which again, is completely outside the control of Plaintiff). Nevertheless, this is exactly what Defendant Wabash is proposing in this case.[2]

---

[2] In their Brief, Wabash attempts a burden-shift by claiming "Counsel for Wabash has not found any case from the District of New Jersey that held experts' preparation time was not reimbursable, nor any case from the District of New Jersey that held experts' travel time and/or expenses was not reimbursable." See Defendant Wabash's Brief, p. 3. While this may be technically true, it is only accurate insofar as the District of New Jersey has

Instead, in their Brief, Defendant Wabash boldly states that their approach for liability experts having the time they spend traveling and the money they pay out in travel expenses reimbursed is "universal or nearly universally accepted among courts", and that the deposition preparation time, while "more controversial" is permissible and acceptable from "the weight of authority and the cases from districts within the Third Circuit." See Defendant Wabash's Brief, p. 3. Not only is this an admission by Defendant Wabash that they lack any governing law for their approach, it is also revealing that the allegedly supportive (and certainly non-binding) caselaw cited by Defendant Wabash does not stand for the specific approach advocated by Defendant Wabash.

First and foremost, Defendant Wabash cites, as its primary legal authority, Ndubizu v. Drexel Univ., 2012 U.S. Dist. LEXIS 27661 (2012). A true and correct copy of the Ndubizo opinion is attached hereto as Exhibit "A". While Ndubizo, which is not binding on this Court, does state that an expert's travel time and travel expenses can be reimbursed, the Eastern District of Pennsylvania specifically set a rate of fifty percent (50%) of the expert's normal hourly fee ($250 per hour down to $125 an hour) and applied it to the amount of time the expert spent driving roundtrip from Philadelphia to Scranton (a total of $625.00). See Exhibit "A". Even if Ndubzio was binding on this case (and it is not), the approach in Ndubzio is, emphatically, **not** the approach proposed by Defendant Wabash. Instead, Wabash is proposing that their experts' travel time be reimbursed **at the same rate that the experts charge for being in the deposition**

---

never addressed the issue at all, because, it appears, this Court has never been presented with such an outlandish request. Indeed, if Defendant Wabash's approach truly was the proper (and normal) procedure, one would expect a plethora of governing caselaw (as well as statutes and rules) since expert depositions (and FRCP 26) have been taking place for decades. As such, the palpable silence from the District of New Jersey on this "issue" (as constructively acknowledged by Defendant Wabash) does not provide support for Defendant Wabash's immediate Motion; rather, it strongly suggests that Defendant Wabash's approach is completely unprecedented.

**itself**. See Defendant Wabash's Brief, p. 5 (hourly deposition rate for Mr. Kemp and Mr. O'Shea is the same as the travel rate).

Moreover, even though the non-binding <u>Ndubzio</u> decision did recommend reimbursement of expert witnesses for preparation time, it is notable that the Eastern District slashed the rate charged for the deposition preparation of the expert ($250 per hour down to $200 per hour). See Exhibit "A". This is, again, <u>not</u> the approach advocated by Defendant Wabash, which, instead, is seeking to have deposition preparation reimbursed at the expert's normal <u>full</u> hourly rate. See Defendant Wabash's Brief, p. 5. (all three experts seek reimbursement for preparation time at the same rate they charge for testifying at their respective depositions).

With the understanding that Defendant Wabash lacks even supportive (i.e. non-binding) caselaw for their proffered approach, this Court must now turn its attention to what Defendant Wabash is actually proposing. For starters, Defendant Wabash wishes to have Plaintiff pay its own biomechanical engineer (Dr. Dorris) for four (4) hours of alleged deposition preparation time, as well as the four hours he spent at his deposition (which Defendant Wabash has arbitrarily proposed as a "maximum amount" for all experts preparing for depositions in this case). See Defendant's Brief, p. 5. If Defendant Wabash's proposed approach was adopted, this Court would be forced to make a subjective determination as to whether four hours of deposition preparation time was **(a)** reasonable and, if not, **(b)** how many hours of preparation time would be considered reasonable given the extent of Dr. Dorris' report, and then repeat this process for <u>every</u> liability expert witness deposed in this case and <u>every</u> subsequent case. This is flatly inconsistent with judicial economy, and would exhaust court resources.

Moreover, Defendant Wabash wishes to have Plaintiff pay its own heavy-truck design expert (Mr. Kemp) a total of four hours of deposition preparation <u>as well as</u> nine hours spent traveling (a total of eleven hours) <u>as well as</u> almost a thousand dollars in miscellaneous "travel expenses" (totaling $998.43), all of which are in addition to the eight hours of time Mr. Kemp actually spent at his deposition. See Defendant's Brief, p. 5. It is absurd for Defendant Wabash to assert that Plaintiff should pay a $5,418.38 bill for Mr. Kemp, when only twenty one percent (21%) of said bill ($1,170.00) actually relates to deposition time.

Finally, and most importantly, Defendant Wabash is seeking to have Plaintiff reimburse its "expert" Robert O'Shea for deposition costs totaling $6,844.82, of which only twenty eight percent, or $1,960.00, was actually billed for the time at the deposition (a copy of the transcript is attached hereto as Exhibit "B"). In light of what was learned at deposition about Mr. O'Shea's involvement in this case; specifically, that Mr. O'Shea had not actually prepared a report (in contravention of FRCP 26) Defendant Wabash's demand for approximately five thousand dollars in travel time, travel expense, and deposition preparation reimbursement becomes patently unreasonable.

Specifically, at his deposition, Mr. O'Shea (whose name prominently appears on a report, and was specifically produced by Defendant Wabash instead of Dr. Kent Johnson, the other individual connected with the report[3]) repeatedly admitted that he had not actually prepared a report, which is a clear violation of FRCP 26 which mandates that each testifying expert must

---

[3] A true and correct copy of the report is attached hereto as Exhibit "C".

7

<u>prepare</u> and <u>sign</u> a report:[4]

> Q. I'm going to show you what's been marked for identification as O'Shea-3. I believe that's your report, sir. Correct?
>
> A. That is the report Dr. Kent Johnson prepared that I reviewed and assisted him on.
>
> Q. Okay. Did you write any part of that report?
>
> A. Other than making some changes in it, no, I did not.
>
> Q. Okay. Do you know - - I'm going to give you a highlighter. Can you show me what changes you made in the report? Can you highlight that for me on O'Shea-3, please?
>
> A. They were just grammatical mistakes. I cannot highlight any of them at the time, an "e-d" or...
>
> Q. So aside form any grammatical mistakes that were - - that you changed in the report, did you make any substantive change at all in O'Shea for identification?
>
> A. **No, I did not.** See Exhibit "B", pp. 46-47.
>
> \*\*\*\*
>
> Q. Aside from reviewing the work from Dr. Johnson, is it fair to say that you didn't do any work in preparation of O'Shea-3?
>
> A. **I assisted him in the inspection. I did look at the fracture surface, and we concurred and talked about the fracture surfaces, and we looked at the straps together, but I did not prepare the report.** See Exhibit "B", p. 47.
>
> \*\*\*\*

---

[4] Mr. O'Shea, who is not a treating physician, does not fall into any enumerated exception to the requirement for the preparation of a report pursuant to FRCP 26.

> Q. *And you've never prepared a report in this case. Is that fair to say?*
>
> A. *That's correct.* See Exhibit "B", p. 56.
>
> \*\*\*\*
>
> Q. *Did you ever prepare a written report in this case at all?*
>
> A. *No, I have not.* See Exhibit "B", p. 57.
>
> \*\*\*\*
>
> Q. **Mr. O'Shea, while we were on break, we had an opportunity to review the Rules of Civil Procedure. And I'm going to make a brief statement on the record before I begin questioning you again.** *Under the Rules of Civil Procedure for an expert to testify at trial, they must have prepared a written report, and we've confirmed that you have not prepared any written report in this case, correct?*
>
> A. *That is correct.*
>
> Q. **And I will continue taking your deposition, but I am not waiving my right to preclude Mr. O'Shea from testifying at the time of trial because his testimony is in violation of Rule 26 of the Federal Rules of Civil Procedure. He has not prepared any report in this case.** See Exhibit "B", p. 58.

Similarly, at his deposition, Mr. O'Shea admitted that he and Dr. Johnson were employed by different companies, had offices in different cities, and further acknowledged that **(a)** he maintained a different file than Dr. Johnson [see Exhibit "B", p. 75]; **(b)** Dr. Johnson had potentially different notes than him [see Exhibit "B", pp. 75-76, and 95-96]; **(c)** he had never reviewed Dr. Johnson's file in preparation for his deposition and did not know the contents of Dr. Johnson's file [See Exhibit "B", pp. 192-193]; and, *inter alia,* **(d)** he was unaware of what, if any, calculations Dr. Johnson had performed [see Exhibit "B", p. 197] . Thus, while it is arguable whether Mr. O'Shea (who will be the subject of a comprehensive motion in

9

limine/Daubert challenge) should receive a dime from Plaintiff even for the time he spent at the deposition (due to his failure to prepare a report in violation of FRCP 26) it is meritless to suggest that he should be reimbursed for travel expenses, travel time, and time spent preparing for deposition (which, as previously indicated, represents seventy-two percent of the overall O'Shea invoice).

Quite simply, there is no logical end to the conceivable deposition costs that a deposing party would be forced to pay if Defendant Wabash's approach is adopted. Indeed, when following the approach of Defendant Wabash (which suggests that <u>all</u> costs that have <u>anything</u> to do with the opposing party's expert deposition should be born by the deposing party at the <u>full rate</u> charged by the expert for testifying at deposition) there is <u>nothing</u> to stop the producing party from demanding reimbursement for an expert's time spent reviewing his or her own deposition transcript, and for the time spent preparing an errata sheet. Thus, Defendant Wabash's proposed approach is **(a)** grossly incompatible with fairness and judicial economy; **(b)** incompatible with the caselaw Defendant Wabash uses to support its own motion, and **(c)** should be summarily rejected by this Court.

**B.** **<u>Reimbursing Deposed Experts Exclusively Based Upon the Time they are Present at Their Deposition is Easily-Calculable, Readily-Verifiable, Consistent, and Does not Waste the Resources of the Court by Requiring Judicial Determination as "Reasonability" *vis a vis* the Reimbursability of Widely-Fluctuating Travel Expenses and Time Allegedly Spent by the Expert in Preparing for the Deposition</u>**

Every modern stenographic record notes the time the deposition begins and the time the deposition ends. Once an expert's hourly rate (or flat-rate deposition fee) is ascertained, the payment to the expert becomes straightforward and is not prone to fluctuating variables that the

deposition party has no control over (i.e. location of the witness, the amount the witness chooses to expend in travel costs, the travel method chosen by the witness[5], and the amount of time the witness chooses to prepare for deposition (a decision that would likely require some input from the attorney producing the witness). Moreover, it is easy for the court reporter (or videographer) to represent to parties how much time they have actually spent on the stenographic record (which is important if a deposition is suspended and thereafter reconvened at a later date). Plaintiff has proposed that experts be reimbursed by the deposing party once the deposition starts and continue to pay until the deposition concludes, including any time spent during breaks. In so doing, all this Court need do, in the event of a dispute, is look at the hourly rate (or flat rate) of the witness, examine the amount of time the parties were present at the deposition, and subsequently rule. This is the ordinary, regular, and expected process, and should be followed in this case.

## III. CONCLUSION

For all aforementioned reasons, Plaintiff respectfully requests this Honorable Court to enter the attached proposed order.

---

[5] Obviously, the travel methodology can range widely, even within the limited confines of airplane travel (i.e. non-stop vs. layovers, first class vs. coach, early scheduling vs. last minute arrangements, etc.). This is, yet again, why deposing parties, who do not control the travel methodology used by an opposing expert witness, should not be required to pay these types of expenses and why the Court should not waste its resources making subjective determinations as to what type of travel arrangements are reasonable and reimbursable.

Respectfully submitted,

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.

By: _____
Stewart J. Eisenberg, Esquire
Nancy J. Winkler, Esquire
Daniel J. Sherry Jr., Esquire

DATED: 5/9/2012